UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CRISTOBAL VINCENTE CHAY POZ,                :
                                             :
                        Plaintiff,           :
                                             :
            -against-                        :            **MEMORANDUM AND ORDER**
                                             :            23-cv-7902 (DLI)
ALEJANDRO MAYORKAS, SECRETARY, U.S.   :
DEPARTMENT OF HOMELAND SECURITY;    :
and UR M. JADDOU, DIRECTOR, U.S.            :
CITIZENSHIP AND IMMIGRATION SERVICES;  :
                                             :
                        Defendants.          :
                                             :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On October 23, 2023, Plaintiff Cristobal Vincente Chay Poz ("Plaintiff") filed this action against Defendants Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security ("DHS"), and Ur M. Jaddou, in his official capacity as Director of the United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants") pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.* Plaintiff seeks an order directing USCIS to adjudicate his Form I-601A Application for Provisional Unlawful Presence Waiver ("I-601A"). *See*, Compl., Dkt. Entry No. 1. Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See*, Mot., Dkt. Entry No. 7. Plaintiff opposed. *See*, Opp'n, Dkt. Entry No. 11. Defendants replied. *See*, Reply, Dkt. Entry No. 12. For the reasons set forth below, Defendants' motion is granted without prejudice.

## BACKGROUND[1]

In February 1999, Plaintiff, a citizen of Guatemala, entered the United States without undergoing inspection.  Compl. ¶ 17; Mot. 6-7.  In December 2019, he married Amanda Moura who, at the time, was a lawful permanent resident and in 2022 became a naturalized U.S. citizen.  Compl. ¶¶ 17-18; Mot. 7.  In April 2020, Ms. Moura filed an I-130 immigrant visa application for Plaintiff, which USCIS approved in April 2021.  Compl. ¶ 17.

Plaintiff cannot adjust his status until he travels abroad to obtain an immigrant visa with the United States Department of State at a U.S. consulate in Guatemala.  *See*, Compl. ¶¶ 2, 10; Mot. 3; 8 U.S.C. § 1202(a); 22 C.F.R. § 42.61(a).  However, as he has been in the United States unlawfully for more than one year, he would be barred from admission back into the United States for the 10 years following his departure.  *See*, 8 U.S.C. § 1182(a)(9)(B)(i)(II).  This inadmissibility may be waived if Plaintiff can show that denial of admission would cause "extreme hardship" to Ms. Moura, his U.S. citizen spouse.  Compl. ¶ 12; Mot. 4; 8 U.S.C. § 1182(a)(9)(B)(v).  Additionally, DHS promulgated rules that allow applicants to apply for a provisional waiver of inadmissibility for unlawful presence prior to departing the United States to obtain the visa, providing applicants a level of confidence that they may be able to return to the United States.  Mot. 5; *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives*, 78 Fed. Reg. 536 (Jan. 3, 2013); 8 C.F.R. § 212.7(e)(3).  The applicant must submit an I-601A application to apply for that waiver, detailing the extreme hardship that would result if it were not granted.  Compl. ¶ 15.

Plaintiff filed his I-601A application on December 20, 2021.  Compl. ¶ 17.  He alleges that his inadmissibility would cause extreme hardship to Ms. Moura, who would be deprived of

---

[1] The following facts are taken from the Complaint and any documents of which the parties are presumed to have knowledge of and are accepted as true as they must at this stage of the case.

Plaintiff's financial and emotional support and who previously has been victim of violence in the United States and Nicaragua due to her sexuality and gender identity.  Compl. ¶ 18.  Plaintiff also alleges that he and Ms. Moura have been unable to maintain stable housing due to "Plaintiff being unable to legally work until he has attained legal status" in the United States.  *Id.*  To date the I-601A application remains pending.  Compl. ¶ 4; Mot. 7.

## LEGAL STANDARD

### I.     Federal Rule of Civil Procedure 12(b)(1)

It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation marks omitted).  "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*."  *Id*.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all material factual allegations in the complaint."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### II.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The plausibility standard "does not require 'detailed factual

allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted). The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

While the Court generally considers only facts alleged in the complaint or contained in documents attached or incorporated by reference, other facts and documents can "be appropriately considered if [they are those] upon which the complaint solely relies and [are] integral to the complaint." *Lohan v. Perez*, 924 F. Supp.2d 447, 453 (E.D.N.Y. 2013) (modifications, quotations, and internal citation omitted). "The Court may properly consider 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp.3d 377, 399 (E.D.N.Y. 2018) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## DISCUSSION

### I.     Mandamus Act Claim

Defendants contend that the Mandamus Act claim should be dismissed either for lack of subject matter jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6), though they acknowledge that courts often review such claims solely for failure to state a claim. *See*, Mot. 10 n. 6.  Plaintiff contends that this claim should be addressed as a Rule 12(b)(6) motion. As Defendants do not dispute this, and in accord with other courts' approaches, the Court will review the Mandamus Act claim under Rule 12(b)(6).  *See*, *e.g.*, *Zheng v. Garland*, 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) ("[T]he Court adopts the reasoning in the recent decisions in this district in which courts have dismissed actions seeking mandamus relief to compel USCIS to evaluate asylum applications pursuant to Rule 12(b)(6)."); *City of New York v. U.S. Postal Serv.*, 519 F. Supp.3d 111, 127 n. 9 (E.D.N.Y. 2021) ("The Second Circuit has not decided the issue, . . . [but] the better and more modern view is that [the court has] subject matter jurisdiction over the alleged [Mandamus Act] claim, but plaintiffs have failed to adequately state it"); *Zhang v. Wolf*, 2020 WL 5878255, at *3 (E.D.N.Y. Sept. 30, 2020) (finding there to be subject matter jurisdiction for plaintiff's Mandamus Act claim for his asylum application).

The Mandamus Act provides that "district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available."  *Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008) (citing *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir.1989)).

Here, Plaintiff has not shown that he has a clear right to an expedited adjudication of his application or that USCIS has a duty to expedite. The INA provides no mandated timeline for I-601A adjudications. The statute provides that, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." 8 U.S.C. § 1571(b). This provision "is merely precatory and does not create an enforceable right." *Li v. Chertoff*, 2007 WL 4326784, at *5 (E.D.N.Y. Dec. 7, 2007) (quotation marks omitted). Thus, USCIS does not have a "plainly defined and peremptory duty" to adjudicate the I-601A application within a particular time frame. *See*, *Almakalani v. McAleenan*, 527 F. Supp.3d 205, 226 (E.D.N.Y. 2021). Additionally, the fact that Plaintiff has brought an undue delay claim under the APA demonstrates that he has an adequate remedy available. *See*, *Chen v. Mayorkas*, 2024 WL 2846911, at *7 (E.D.N.Y. June 5, 2024) (dismissing the mandamus claim for an I-601A application because of the availability of a cause of action under the APA). Accordingly, Plaintiff fails to state a claim for relief under the Mandamus Act.

## II.     APA Claim

Defendants contend, and Plaintiff disputes, that Plaintiff fails to state a claim that USCIS unreasonably delayed adjudication of Plaintiff's I-601A application under the APA. The APA gives the Court the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Second Circuit uses the six factor test outlined in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir. 1984) (the "*TRAC* factors") to determine whether agency action was delayed unreasonably. *See*, *Mu v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023) (citing *Nat. Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013)).

The six *TRAC* factors are:

(1) The time agencies take to make decisions must be governed by a rule of reason;
(2) Where Congress has provided a timetable, it may supply content for this rule of reason;
(3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) The effect of expediting delayed action on agency activities of a higher or competing priority;
(5) The nature and extent of the interests prejudiced by delay; and
(6) The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80 (internal quotation marks and modifications omitted).  "A party may prevail even without demonstrating that all of these factors weigh in that party's favor."  *Mu*, 2023 WL 4687077, at *4.

The first *TRAC* factor, the agency's rule of reason, is the "most important."  *Chen*, 2024 WL 2846911, at *5 (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). Defendants contend that "USCIS generally adjudicates I-601A applications in the order they are received."  *See*, Mot. 18.  In response, Plaintiff contends that processing times of I-601A applications has increased over the years, which undermines any claim of a rule of reason.  *See*, Opp'n 15.  Other courts have considered and rejected Plaintiff's argument.  *See*, *Chen*, 2024 WL 2846911, at *5; *Aydemir v. Garland*, 2022 WL 4085846, at *4 (S.D.N.Y. Sept 6, 2022); *N-N v. Mayorkas*, 540 F. Supp.3d 240, 261 (E.D.N.Y. 2021).  The Court concurs that USCIS's "first in, first out" policy for adjudicating I-601A applications is governed by a rule of reason.

Plaintiff offers evidence for the first time in his Opposition that purports to show that USCIS is not adjudicating I-601A applications in the order in which they are received, contradicting assertions that there is a rule of reason.  *See*, Opp'n 15; Paul O'Dwyer Decl. Ex. B, Dkt. Entry No. 11-3.  However, as this factual evidence was not attached to the Complaint or incorporated in it by reference, the Court will not consider it as it is improperly submitted.  *See*, *Lohan*, 924 F. Supp.2d at 453.

Defendants contend that the second *TRAC* factor, regarding a Congressional timetable, does not weigh in Plaintiff's favor.  Mot. 20.  Plaintiff notes that Congress has stated that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  Compl. ¶ 28 (quoting 8 U.S.C. § 1571(b)).  As noted above, that policy statement embedded in statute serves "simply to provide context for the specific reforms to immigration administration provided for in later sections."  *Li*, 2007 WL 4326784, at *5.  "[T]he statute is merely precatory and does not create an enforceable right."  *Id.* (quotation marks omitted).  This factor "weighs slightly" in favor of Plaintiff given the length of the delay here.  *Aydemir*, 2022 WL 4085846, at *5.

The third and fifth *TRAC* factors both concern the impact of the alleged unreasonable delay on human health, welfare, and other interests.  Plaintiff contends that Ms. Moura relies on him for financial support and that he has been unable to find stable housing due to the inability to work legally.  Compl. ¶ 18.  Defendants contend that Plaintiff has not pled sufficiently allegations of harm and prejudice that would call for the Court to intervene, and note the apparent contradiction in Plaintiff's inability to work legally while providing financial support to Ms. Moura.  Mot. 19.

While human welfare is at stake here, it is difficult to reconcile the contradiction between Plaintiff's inability to work due to his illegal status and his wife's financial dependence on him.  Ms. Moura, as a U.S. citizen, has the ability to obtain lawful employment and a stable residence.  Moreover, while the Court is sympathetic to Plaintiff and Ms. Moura's situation, it cannot ignore USCIS's resource and staffing constraints that give rise to delays.  As other courts in this district have observed, "[t]his is the regrettable reality that our immigration system—'overstressed' and 'under-resourced' as it is—has wrought for many families."  *See*, *Chen*, 2024 WL 2846911, at *6.  Plaintiff's delay of less than three years is not an anomaly.  Courts repeatedly find that such delays

are not unreasonable when they consider this together with the other *TRAC* factors. *See*, *e.g.*, *Chen*, 2024 WL 2846911, at *6 (collecting cases and finding a 3-year delay for I-601A adjudication not unreasonable); *Almakalani*, 527 F. Supp.3d at 225 ("[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable.").

Regarding the fourth *TRAC* factor, the parties dispute whether expediting the process would impact "agency activities of a higher or competing priority." *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80. Numerous courts have found it inappropriate to grant relief for an unreasonable delay claim "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *L.M. v. Johnson*, 150 F. Supp.3d 202, 213 (E.D.N.Y. 2015) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *See also*, *Chen*, 2024 WL 2846911, at *6 (finding the same in the I-601A context); *Almakalani*, 527 F. Supp.3d at 225 (finding this factor weighed "strongly against relief that would permit Plaintiffs to circumvent the line and receive final decisions sooner than other Form I-130 applicants"). "[T]he Court must consider competing priorities, such as whether compelling the agency to focus its attention on one case would force it to shift resources away from equally deserving applicants." *Zhang*, 2020 WL 5878255, at *5 (internal quotation marks and citation omitted). The relief sought here would result in this very line jumping that would provide relief to Plaintiff at the expense of another applicant.

Plaintiff's opposing arguments regarding the fourth *TRAC* factor are unavailing. He suggests that other later filed I-601A applications have been adjudicated before his, but, as discussed above, the Court cannot consider the evidence in this Rule 12(b)(6) motion. *See*, Opp'n 13; *See also*, *Lohan*, 924 F. Supp.2d at 453. The Court also finds unpersuasive Plaintiff's

arguments that "line jumping" is permissible here because it is permissible in other immigration benefit contexts or because it would "encourage the agency to change its ways."  *See*, Opp'n 14. As frustrating as the USCIS backlog may be, it is not apparent that allowing line jumping here, in contradiction to decisions of other courts, would have that effect, even if it were proper for the Court to interfere in such a way with agency operations.  In any event, the approximately 33-month delay here is well below the 44-month median processing time of I-601A applications.  *See*, Compl. ¶ 25.  Plaintiff hardly can say that his application should be prioritized over applications pending for more than 44 months.

Finally, as Plaintiff contends, the sixth *TRAC* factor does not require him to allege impropriety on the part of USCIS in contributing to the delay.  *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80; *See also*, Compl. ¶¶ 39-40.  This factor is neutral.  *See*, *Cohen v. Jaddou*, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023).  Thus, considering the *TRAC* factors as a whole, the Court finds that the delay in adjudication of Plaintiff's I-601A application has not been unreasonable, and Plaintiff has failed to state a claim under the APA.

## CONCLUSION

Plaintiff has not shown there to be an unreasonable delay at this time.  For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice.


SO ORDERED.

Dated:  Brooklyn, New York
            September 26, 2024


                                                            /s/
                                              DORA L. IRIZARRY
                                            United States District Judge